**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**
————————————————————X

**ROBERT M. GRASSON,**

                 **Plaintiff,**

    **- against -**

**BOARD OF EDUCATION OF TOWN OF**
**ORANGE, TIM JAMES, KIMBERLY**
**ALTSCHULER, JEANNE CONSIGLIO,**
**JOSEPH MARULLI, DAVID PITE,**
**KRISTEN C. POWELL, ERNIE ROBEAR,**
**RON RUOTOLO, LARRY SCHWARTZ,**
**TONI VITTI, PATRICIA P. ZIMAN and**
**ALFRED PULLO,**

               **Defendants.**
————————————————————X

**OPINION AND ORDER**

**09 Civ. 1584 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

        Robert Grasson alleges that defendants[1] terminated his pupil

transportation contract without just cause, failed to provide him with notice and a

hearing before doing so, and damaged his reputation by stating or implying that he

---

[1]       The defendants are the Board of Education of the Town of Orange
(the "Board"); Tim James, the Superintendent of Schools for the Town of Orange
("James"); Alfred Pullo, the business manager for the Board ("Pullo"); and the
members of the Board at the time of the events described in the Complaint.  *See*
Complaint ¶¶ 1-5.  James, Pullo, and the Board members are referred to
collectively as the "individual defendants."

was a pedophile.[2]  Grasson brings claims against the Board for breach of contract and, under section 1983, deprivation of his substantive and procedural due process rights; and against the individual defendants for  deprivation of his due process rights and for various common law torts.[3]  Defendants now move for summary judgment on all claims.  For the following reasons, defendants' motion is GRANTED in part and DENIED in part and the remaining state law claim is remanded to the Superior Court of Connecticut, Judicial District of New Haven.

## II.    BACKGROUND[4]

---

[2]     This action was originally filed in the Superior Court of Connecticut, Judicial District of New Haven.  It was removed by defendants based on the assertion of claims under section 1983 of Title 42 of the United States Code ("section 1983").

[3]     The tort claims are for conversion, defamation, invasion of privacy, negligent infliction of emotional distress, and tortious interference with business expectancy.  On April 12, 2010, United States District Judge Peter C. Dorsey granted in part and denied in part defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Grasson v. Board of Educ. of Town of Orange*, No. 09 Civ. 1584, 2010 WL 1444570 (D. Conn. Apr. 12, 2010) ("*Grasson I*").  Grasson's tort claims against the Board were dismissed pursuant to Connecticut General Statute § 52-557n(a)(2) ("section 52-557n(a)(2)"), which provides for governmental immunity for intentional tort and negligence claims.  *See id.* at *3.  His breach of contract and covenant of good faith and fair dealing claims were dismissed as to the individual defendants because they were not parties to the contract between Grasson and the Board.  *See id.* at *4.  Defendants did not seek dismissal of the tort claims against the individual defendants.

[4]     The following facts are derived from the Complaint, the parties' Local Rule 56(a) statements, and supporting documents.  The facts are undisputed unless otherwise noted.  Where disputed, they are construed in the light most favorable to

1.      **The Transportation Contract**

On May 15, 2004, the Board and Grasson entered into a contract for the transportation of elementary and kindergarten school children in the Town of Orange.[5]  Section C of the contract provides that:

> This contract is to take effect July 1, 2004 and is to continue until June 30, 2009 with the understanding that the contract may be cancelled by either party by giving ninety days written notice to the other party of intent to cancel.  In the case of the Board, the 90 day notice may be given by the Superintendent to the Owner-Driver.  The Board of Education agrees that no Owner-Driver's contract will be cancelled except for just cause as voted by a majority of the Orange Board of Education during said 90 day period.  The Board of Education reserves the right, under the "just cause" clause to cancel this contract if a decline in school population makes a bus unnecessary.
>
> The Superintendent may suspend without compensation an Owner-Driver's services for any material breach of this Contract or for a serious safety violation, pending the Board's consideration of a Contract cancellation vote.  In such case, at the time of such vote, the Board shall also, by majority vote, determine whether the contract breach or safety violation warrants forfeiture of compensation during all or part of the 90

---

the plaintiff.  *See, e.g.*, *Federal Ins. Co. v. American Home Assurance Co.*, 639 F.3d 557, 566 (2d Cir. 2011).

[5]      *See* Local Rule 56(a)1 Statement in Support of Defendants' Motion for Summary Judgment ("Def. 56(a)1") ¶ 1.  In this opinion, I only cite to paragraphs in Defendants' Local Rule 56(a)1 Statement to which Grasson responded "Admitted" in his Local Rule 56(a)2 Statement in Opposition to Defendants' Motion for Summary Judgment.

day period.[6]

Grasson claims, but defendants dispute, that the contract was automatically

renewable upon expiration.[7]

### 2.    The Incident

On September 17, 2007, Grasson was driving three female

kindergarten students from school to their homes.[8]  At some point Grasson had a

conversation with one or more of the students on the bus during which he said that

the bus was a "magic bus" that could turn into a house and asked whether the

students could "keep a secret."[9]  However, Grasson claims that he has never

initiated a conversation with a student by asking if he or she could keep a secret.[10]

According to Grasson, the bus he was driving in September 2007 had a unique

appearance, which prompted children to ask him if it was a "magic bus," referring

---

[6]    5/15/04 Contract for Transportation of Elementary and Kindergarten
School Children of the Town of Orange, Ex. A to Memorandum of Law in Support
of Defendants' Motion for Summary Judgment ("Def. Mem."), § C.

[7]    *See* 12/6/11 Affidavit of Robert Grasson ("Grasson Aff."), Ex. 8 to
Memorandum of Law in Support of Plaintiff's Objection to Defendants' Motion
for Summary Judgment ("Pl. Mem."), ¶ 6.

[8]    *See* Pl. Mem. at 2-3.

[9]    *Id.* at 3.

[10]    *See* Grasson Aff. ¶ 13.

-4-

to a children's book and television series about a bus that transformed into different objects to take children on educational field trips.[11]

### 3.   James's Investigation

Superintendent James spoke with one of the parents of the children on the day of the incident, and the parents of the other two children the following day.[12]  Coincidentally, James had attended a meeting with superintendents from nearby towns on September 18, 2007, where he "learned that one statement that nearly all child predators will initiate conversations with children is, 'Can you keep a secret?'" and that "[i]f in later conversations, the child reports that s/he has kept the secret, contact often escalates."[13]  On September 19, 2007, based on his belief that Grasson worked for the Winkle Bus Company ("Winkle"), James asked Pullo to contact Lori Winkle to arrange for a substitute driver until the matter could be further investigated.[14]  Pullo said that there had been complaints about inappropriate comments on the bus, but did not elaborate.[15]  Within minutes of

---

[11]   *See id.* ¶¶ 14-16.

[12]   *See* Def. 56(a)1 ¶ 7.

[13]   *Id.* ¶ 13.

[14]   *See id.* ¶ 14.  Grasson worked part time for Winkle both as a driver and a driver trainer, but not in connection with his contract with the Board.  *See* Pl. Mem. at 1.

[15]   *See* Def. Rule 56(a)1 ¶ 15.

Pullo's call to Winkle, Grasson called James.[16]  James told Grasson that he had

received complaints that Grasson had asked the students to keep a secret and told

the students that the bus was a magic bus that turned into a house with various

rooms.[17]  Grasson did not explain to James why he had engaged in the conversation

with the kids.[18]  Grasson and James agreed to meet the next day.[19]

       Grasson and James met on September 20, 2007, and three members of

the Winkle family appeared at the meeting in support of Grasson.[20]  Grasson

claims, but defendants dispute, that James "referred to [him] as a pedophile and

talked about [him] in the context of priests and boy scout leaders who prey upon

children."[21]  At the conclusion of the meeting, James suspended Grasson, with pay,

pending a review and decision by the Board.[22]  James told Grasson that he would

likely be recommending suspension or termination of the parties' contract.[23]  After

---

[16]    *See id.* ¶ 16.

[17]    *See id.* ¶ 17.

[18]    *See id.* ¶ 19.

[19]    *See id.* ¶ 21.

[20]    *See id.* ¶ 22.

[21]    Grasson Aff. ¶ 20.

[22]    *See* Def. Rule 56(a)1 ¶ 27.

[23]    *See id.* ¶ 28.

the meeting on September 20, 2007, James spoke with the children's parents again and asked them if they would be willing to submit a statement in writing explaining what their children had told them.[24]  The parents agreed and submitted statements.[25]

### 4.      The Board Meetings

On September 26, 2007, the Board held a special meeting to discuss Grasson's transportation contract and his future as a bus driver in the district.[26] Neither Grasson nor his attorney were present at the special meeting, although Grasson admits that he had notice of the meeting.[27]  At the meeting, the Board discussed, in executive session, the parents' complaints, James's conversations with Grasson, and the Board's options under the contract.[28]  The Board adjourned the meeting so that it could discuss the matter with its attorneys.[29]

---

[24]      *See id.* ¶ 31.

[25]      *See id.*

[26]      *See id.* ¶ 37.

[27]      *See* 1/4/11 Affidavit of Plaintiff Robert M. Grasson in Support of Objection to Disqualify Counsel ¶ 10.

[28]      *See* Def. Rule 56(a)1 ¶ 39.

[29]      *See id.* ¶ 40.

The Board met again on October 9, 2007.[30]  Neither Grasson nor his attorney were present,[31] and Grasson had no notice of the meeting.  The minute entry relating to Grasson's contract provides that:

> The Board moves to terminate for just cause the contract between the Board and Mr. Robert Grasson for the transportation of elementary and kindergarten school children of the Town of Orange, effective July 1, 2004 through June 30, 2009.  Further, the Board moves that compensation for said transportation services shall not be provided to Mr. Grasson during that contractually mandated 90-day notice period, except for money already paid during that period of time.[32]

The minutes indicate that the vote passed 9-0.[33]

On October 11, 2007, James sent Grasson "notice of the termination of the Contract."[34]  The Termination Letter states that:

> Such notice is being served in accordance with Section C of the Contract, which states, in part, the "contract may be cancelled by either party by giving ninety days written notice to the other party of intent to cancel."  The board may terminate the contract "for just cause as voted by a majority of the Orange Board of Education."  Additionally, [t]he Board may, by a majority vote, "determine whether the contract breach or safety violation

---

[30]    *See id.* ¶ 41.

[31]    *See id.* ¶ 42.

[32]    10/9/07 Executive Meeting Minutes of the Board, Ex. 20 to Pl. Mem.

[33]    *See id.*

[34]    *See* Def. Rule 56(a)1 ¶ 47; 11/10/07 Letter from James to Grasson, Ex. W to Def. Mem. ("Termination Letter").

-8-

warrants forfeiture of compensation during all or part of the 90 day period."

The letter describes James's investigation, and asserts that during the telephone conversation on September 19, 2007, Grasson "admitted to having made inappropriate comments to students . . ., including asking said students if they could, 'keep a secret.'"  It further states that "[b]ased on your inappropriate comments to students on or around September 17, 2007, the Board unanimously voted on October 9, 2007 to cancel the Contract, effective at the end of the ninety (90) day notice period, or January 10, 200[8]."

> According to Grasson:
>
> Prior to the termination of my contract by the [Board], I was not given notice of the specific grounds for termination[. T]he evidence against me, including the written complaints on which the action was based, were not disclosed to me[.] I was not given an opportunity to be heard in my defense personally or by counsel at a public hearing before an impartial tribunal[.]  I was not afforded an opportunity to examine those persons who[se] complaints were the basis for the action against me, nor was I provided with a post deprivation hearing.[35]

Following his termination, the Winkles, as well as the Amity school district, continue to permit Grasson to drive for them, despite knowing why his contract with the Board was cancelled.[36]

---

[35]     Grasson Aff. ¶ 26.

[36]     *See* Def. Rule 56(a)1 ¶ 52.

## III.   LEGAL STANDARDS

### A.   Summary Judgment

"Summary judgment is appropriate 'only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law.'"[37] "A genuine dispute exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[38] "'A fact is material if it might affect the outcome of the suit under the governing law.'"[39]

"The burden is on the moving party to demonstrate that no genuine issue respecting any material fact exists."[40]  Nevertheless, to defeat a motion for

---

[37]   *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.,* 583 F.3d 92, 96 (2d Cir. 2009)) (other quotations omitted).

[38]   *Benn v. Kissane,* 510 Fed. App'x 34, 36 (2d Cir. 2013), *cert. denied,* 134 S. Ct. 78 (2013) (quoting *General Star Nat'l Ins. Co. v. Universal Fabricators, Inc.,* 585 F.3d 662, 669 (2d Cir. 2009)) (other quotations omitted).

[39]   *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 94 (2d Cir. 2012) (quoting *Bessemer Trust Co. v. Branin*, 618 F.3d 76, 85 (2d Cir. 2010)).

[40]   *Mavrommatis v. Carey Limousine Westchester, Inc.*, No. 10 Civ. 3404, 2011 WL 3903429, at *1 (2d Cir. Sept. 7, 2011) (citing *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1223 (2d Cir. 1994)).

summary judgment, the non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[41] and "'may not rely on conclusory allegations or unsubstantiated speculation.'"[42]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried."[43] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[44]

Whether contract language is plain or ambiguous is to be determined by a court as a matter of law.[45]  When a moving party relies on contract language,

---

[41]     *Valenti v. Penn Mut. Life Ins. Co.*, 511 Fed. App'x 57, 58  (2d Cir. 2013) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586  (1986)).

[42]     *Northeast Research, LLC v. One Shipwrecked Vessel,* 729 F.3d 197, 214 (2d Cir. 2013) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)).

[43]     *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[44]     *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

[45]     *Samowitz v. Homes For America Holdings, Inc.*, No. 05 Civ. 22, 2006 WL 1980311, at *2 (D. Conn. July 13, 2006) (citing *Schiavone v. Pearce*, 79 F.3d 248 (2d Cir. 1996)).  "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms.  A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ."  *Association Res., Inc. v. Wall*, 298 Conn. 145, 183 (2010).

he must prove that the language "is not susceptible to at least two fairly reasonable meanings."[46]  However, "[i]f the moving party cannot establish unambiguous contract language, a material issue of fact exists concerning the parties' intent, which is a question of fact, thereby rendering summary judgment inappropriate."[47]

## IV.   APPLICABLE LAW

### A.     Breach of Contract

Under Connecticut law, the elements of a breach of contract claim are: "(1) formation of an agreement; (2) performance by one party; (3) breach of the agreement; and (4) damages."[48]  "A contract is to be construed as a whole and all relevant provisions will be considered together."[49]  A contract "is to be construed according to what may be assumed to have been the understanding and intention of the parties."[50]

---

[46]     *Elm Haven Constr. Ltd. P'ship v. Neri Const., LLC*, 281 F. Supp. 2d 406, 408 (D. Conn. 2003) (citing *Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9 (2d Cir. 1983)).

[47]     *Id.* (citing *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)). *Accord A.T. Clayton & Co. v. Hachenberger*, 920 F. Supp. 2d 258, 263-64 (D. Conn. 2013).

[48]     *Mahon v. Chicago Title Ins. Co.*, 296 F.R.D. 63, 78 (D. Conn. 2013) (quotation marks omitted).

[49]     *Lar-Rob Bus Corp. v. Town of Fairfield*, 170 Conn. 397, 407 (1975).

[50]     *Id.* at 406-07.

-12-

**B.      Section 1983**

"To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state . . . law.'"[51]  Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[52]  "The purpose of [section] 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."[53]

A plaintiff asserting a section 1983 claim must show the defendant's "personal involvement . . . in [an] alleged constitutional deprivation[]."[54]  "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own

---

[51]      *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)).

[52]      *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005).  *Accord  Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

[53]      *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[54]      *Martinsky v. City of Bridgeport*, 504 Fed. App'x 43, 46 (2d Cir. 2012) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).

-13-

individual actions, has violated the Constitution."[55]

## C.   Substantive and Procedural Due Process Claims

### 1.   Substantive Due Process

"[T]he Due Process Clause of the Fourteenth Amendment embodies a substantive component that protects against certain government actions regardless of the fairness of the procedures used to implement them."[56]  To prevail on substantive due process claim, a plaintiff must prove that "(1) it had a valid property interest . . .; and (2) 'defendants infringed on that property right in an arbitrary or irrational manner.'"[57]  "[O]nly the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'"[58]  Indeed, "for executive action to violate substantive due process, it must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"[59]

---

[55]     *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citations omitted).

[56]     *Immediato v. Rye Neck Sch. Dist.*, 73 F.3d 454, 460 (2d Cir. 1996) (quotation marks omitted).

[57]     *Royal Crown Day Care LLC v. Department of Health and Mental Hygiene of City of New York*, 746 F.3d 538, 545 (2d Cir. 2014) (quoting *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007)).

[58]     *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)).

[59]     *Bolmer v. Oliveira*, 594 F.3d 134, 142 (2d Cir. 2010) (quoting *Lewis*, 523 U.S. at 847 n.8).  "The shock the conscience standard is not easily met; the plaintiff must show the government conduct was egregious and outrageous, not

-14-

### 2.    Procedural Due Process

"Procedural due process requires that 'a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"[60]  To establish a procedural due process claim, a plaintiff must prove (1) he has a property or liberty interest protected by the Constitution[61] and (2) that government deprived him of that interest without due process.[62]  Analysis of the second prong requires consideration of what process was due and whether the constitutional minimum was provided by the government.[63]

Notice must be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

---

merely incorrect or ill-advised."  *Schultz v. Incorporated Village of Bellport*, No. 08 Civ. 930, 2010 WL 3924751, at *6 (E.D.N.Y. Sept. 30, 2010) (citing *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) and *Ferran v. Town of Nassau*, 471 F.3d 363, 369-70 (2d Cir. 2006)) (quotation marks omitted), *aff'd*, 479 Fed. App'x 358 (2012).

[60]    *Ceja v. Vacca*, 503 Fed. App'x 20, 22 (2d Cir. 2012) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)).

[61]    *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972).

[62]    *Narumanchi v. Board of Trs. of Connecticut State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988).

[63]    *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).

opportunity to present their objections.'"[64]  With respect to a hearing, the Supreme

Court "consistently has held that some form of hearing is required before an

individual is finally deprived of a property interest."[65]  For example, in the context

of termination of a public employee, "[t]he pretermination process 'need not be

elaborate' or approach the level of a 'full adversarial hearing.'"[66]  Nonetheless,

"due process does require that before being terminated such an 'employee be given

oral or written notice of the charges against him, an explanation of the employer's

evidence, and an opportunity to present his side of the story.'"[67]  Finally, a plaintiff

cannot claim a procedural due process violation when the government provides

procedural remedies and the plaintiff does not take advantage of those remedies.[68]

### 3.    Stigma-Plus Claims

---

[64]    *Jones v. Flowers*, 547 U.S. 220, 226 (2006) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

[65]    *Mathews*, 424 U.S. at 333 (discussing how to determine what process is due when a plaintiff has been deprived of a valid property interest).

[66]    *Otero v. Bridgeport Housing Auth.*, 297 F.3d 142, 151 (2d Cir. 2002) (quoting *Loudermill*, 470 U.S. at 545).  *Accord Faghri v. University of Connecticut*, 621 F.3d 92, 99 (2d Cir. 2010) ("The requisite hearing is a minimal one.").

[67]    *Otero*, 297 F.3d at 151 (quoting *Loudermill*, 470 U .S. at 546).

[68]    *See Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 468 n.12 (2d Cir. 2006).

A "stigma-plus" claim is a subset of procedural due process.  It is "brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process."[69] A stigma-plus claim has three elements: (1) statements by the government that call into question plaintiff's "good name, reputation, honor, or integrity" or "denigrate [his] competence as a professional and impugn [his] professional reputation in such a fashion as to effectively put a significant roadblock on [his] continued ability to practice [his] profession;" (2) that were public;[70] and (3) that "were made concurrently in time to [his] dismissal from government employment."[71]

## V.   DISCUSSION

### A.   Breach of Contract

---

[69]   *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003) (quotation marks omitted).  *Accord S & D Maintenance Co., Inc. v. Goldin*, 844 F.2d 962, 970 (2d Cir. 1988) ("A government employee's liberty interest is implicated where the government dismisses him based on charges that might seriously damage his standing and associations in his community or that might impose on him a stigma or other disability that forecloses his freedom to take advantage of other employment opportunities.") (quotation marks and alterations omitted).

[70]   With regard to the publication requirement, "[t]he defamatory statement must be sufficiently public to create or threaten a stigma; hence, a statement made only to the plaintiff, and only in private, ordinarily does not implicate a liberty interest."  *Velez*, 401 F.3d at 87.

[71]   *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (quotation marks omitted).

-17-

Grasson argues that the Board breached the transportation contract in three different ways: (1) terminating it without "just cause;" (2) suspending it in the absence of a "serious safety violation" or "material breach;" and (3) terminating it without first providing him with 90-days notice of intent to cancel.[72] Defendants argue that under the contract's unambiguous terms and undisputed facts, the contract claim fails as a matter of law.

### 1.      Just Cause

Defendants first claim that "a plain reading of the contract establishes that either party could cancel the contract so long as" 90-days written notice is provided.[73]  According to defendants, the "just cause" language in section C applies only to terminations that occur within the 90-day notice period.[74]  However, the contract provides that "[t]he Board of Education agrees that no Owner-Driver's contract will be cancelled except for just cause as voted by a majority of the" Board.[75]  Indeed, James's Termination Letter and the Board's Minutes both state

---

[72]      Pl. Mem. at 11-12.

[73]      Reply Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Reply Mem."), at 5.

[74]      *See id.* at 5-6 ("If just cause were required for all terminations, as suggested by the plaintiff, then the language 'during said 90 day period,' would be rendered meaningless.").

[75]      Contract § C.

that cancellation was based on a finding of just cause by the Board.[76]  Thus, I reject defendants' contention that Grasson's contract was cancelled without a finding of just cause.

Defendants' fallback argument is that even if just cause was required, Grasson's conduct constitutes just cause.[77]  That determination, however, presents a genuine dispute of material fact.  The contract does not define just cause, and Grasson disputes certain aspects of the conversation he had with the children, including whether he initiated the conversation.[78]  According to Grasson, the unusual appearance of his bus prompted children to ask him if it was a "magic bus," based on the Magic School Bus children's book and television series.[79]  In addition, Grasson argues, and defendants do not dispute, that the Board did not have any written rules, policies, or regulations prohibiting a bus driver from speaking with students.[80]  In short, whether Grasson's admitted conduct – stating that the bus was a "magic bus" and asking whether the students "could keep a secret" – provided just cause to cancel the contract is a question for the trier of fact

---

[76]    *See* Pl. Mem. at 14-15; Minutes; Termination Letter.

[77]    *See* Reply Mem. at 4.

[78]    *See* Grasson Aff. ¶ 13.

[79]    *See id.* ¶¶ 14-16.

[80]    *See* Pl. Mem. at 15.

that cannot be resolved on summary judgment.[81]   Accordingly, defendants' motion for summary judgment on plaintiff's contract claim based on "just cause" is denied.

### 2.    Material Breach

Defendants contend that the safety violation and material breach language are not relevant because they relate only to suspensions without pay, and Grasson was suspended with pay.[82]   While Grasson was suspended with pay from September 20, 2007 until the Board's vote on October 9, 2007, he did not receive compensation after the Board's vote, during the 90-day notice period.[83]   Once again, as with the Board's determination of just cause, the Board's determination to withhold payment during the 90-day notice period, raises disputed issues of fact.

---

[81]      The parties cite to cases discussing just cause in the context of termination of an employee.  *See, e.g.*, Reply Mem. at 4; Pl. Mem. at 14.  But as noted by Judge Dorsey, Grasson was not an employee.  *See Grasson I*, 2010 WL 1444570, at *5 (noting, however, that "the cancelling of [Grasson's] contract was akin to a discretionary personnel decision").  However, even under the employment cases cited by defendants, when just cause is required, an employer must offer a "proper reason for dismissal . . . ."  *Slifkin v. Condec Corp.*, 13 Conn. App. 538 (App. Ct. 1988).  Whether the reason offered by defendants for Grasson's dismissal was "proper" cannot, on this record, be determined as a matter of law.

[82]      *See* Reply Mem. at 3.

[83]      *See* Termination Letter (stating that Grasson would not be receiving compensation "during the contractually mandated 90-day notice period, excepting money already paid for that period of time").

-20-

Accordingly, defendants' motion for summary judgment is denied on this claim.

### 3.    Notice of Intent to Cancel

Finally, defendants argue that Grasson was given the required 90-day written notice in the October 11 Termination Letter, which provided that the cancellation is "'effective at the end of the ninety (90) day notice period, or January 10, 200[8].'"[84]   However, the contract provides that no contract will be terminated except for just cause as voted on by the Board "*during* said 90 day period."[85]   October 11, as it happens, is 91 days before January 10, and October 9 – the day of the Board vote – is 93 days before January 10.   Thus, the vote fell outside the 90-day window and may be ineffective.   On this basis alone, defendants' motion for summary judgment on the breach of contract claim must be denied.

### B.    Substantive Due Process

### 1.    Grasson's Claim Is Not Supported by a Sufficient Interest

Courts have distinguished the rights or interests that provide the basis

---

[84]      Reply Mem. at 3 (quoting Termination Letter).

[85]      Contract § C (emphasis added).  It may be that a Board vote is required to issue a notice, but even if it was, nothing precluded the Board from voting first on whether to issue the notice of its intent to cancel the contract and then holding a separate vote, during the 90-day period, on whether it had just cause to terminate the contract.

for substantive and procedural due process claims, and a far narrower range of such rights or interests are protected under the former.  Substantive due process protections extend only to those interests that are "implicit in the concept of ordered liberty,"[86] rights "so rooted in the traditions and conscience of our people as to be ranked as fundamental."[87]  Thus, "[w]hile property interests are protected by procedural due process even though the interest is derived from state law rather than the Constitution, substantive due process rights are created only by the Constitution."[88]

In essence, Grasson asserts that he had a property or liberty interest arising from his contract and a liberty interest in his continued employment as a bus operator.[89]  However, the Second Circuit has held that "state-law contractual rights, without more, are not worthy of substantive due process protection."[90] Indeed, interests related to employment are generally not protected under

---

[86]     *Palko v. Connecticut*, 302 U.S. 319, 325 (1937).

[87]     *Reno v. Flores*, 507 U.S. 292, 303 (1993) (quotation marks omitted).

[88]     *Local 342, Long Island Public Service Employees, UMD, ILA, AFL-CIO v. Town Bd. of Town of Huntington*, 31 F.3d 1191, 1196 (2d Cir. 1994) ("*Local 342*") (quotation marks omitted).

[89]     *See* Pl. Mem. at 26-27.

[90]     *Tessler v. Paterson*, 451 Fed. App'x 30, 32-33 (2d Cir. 2011) (citing *Local 342*, 31 F.3d at 1196) (quotation marks omitted).

substantive due process because they do not implicate fundamental rights, such as "the individual's freedom of choice with respect to certain basic matters of procreation, marriage, and family life."[91]

### 2.    Defendants' Conduct Does Not Shock the Conscience

Moreover, even if the rights and interests asserted by Grasson were considered fundamental, "the defendants' alleged conduct in depriving him of that right [or interest] was not 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'"[92]  While a reasonable jury could find that the Board overreacted in deciding to terminate Grasson, no reasonable jury could find that the

---

[91]    *Harrah Indep. Sch. Dist. v. Martin*, 440 U.S. 194, 198 (1978).  *Accord McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) ("Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection.").

[92]    *Tessler*, 451 Fed. App'x at 33 (quoting *Anthony v. City of New York*, 339 F.3d 129, 143 (2d Cir. 2003)).

Board's conduct shocks the conscience under the Constitution.[93]  Accordingly,

defendants' motion is granted as to Grasson's substantive due process claim.

## C.    Procedural Due Process

### 1.    Property Interest

As a general matter, property interests may be created by statute or

contract.[94]  "In the employment context, a property interest arises only where the

state is barred, whether by statute or contract, from terminating (or not renewing)

---

[93]    *Compare Smith ex rel. Smith v. Half Hollow Hills Cent. Sch. Dist.*,
298 F.3d 168, 173 (2d Cir. 2002) ("Striking a student without any pedagogical or
disciplinary justification" does not shock the conscience.); *Scotti v. County of
Nassau*, No. 02 Civ. 3685, 2005 WL 3670913, at *7-8 (E.D.N.Y. Sept. 13, 2005)
(videotaping and visiting disabled correctional officer's home was not "so brutal
and offensive to human dignity as to shock the conscience") *with Rochin v.
California*, 342 U.S. 165, 172 (1952) (forcibly pumping suspect's stomach to
obtain evidence was conscience-shocking governmental action); *Johnson v.
Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 249-52 (2d Cir. 2001) (finding a
teacher's violent assault of an eighth grade student, including choking the student,
punching him in the face, and ramming the student's head into hard objects shocks
the conscience).

[94]    *See generally Local 342*, 31 F.3d at 1194-95 ("In order for a person to
have a property interest in a benefit such as the right to payment under a contract,
he must have more than a unilateral expectation of it.  He must, instead, have a
legitimate claim of entitlement to it.  When determining whether a plaintiff has a
claim of entitlement, we focus on the applicable statute, contract or regulation that
purports to establish the benefit.  We note that although a public contract can
confer a protectible benefit, not every contract does so, and the type of interest a
person has in the enforcement of an ordinary commercial contract often is
qualitatively different from the interests the Supreme Court has thus far viewed as
'property' entitled to procedural due process protection.") (quotation marks,
citations, and alterations omitted).

the employment relationship without cause."[95]  Were Grasson an employee, this

Court's determination that the Board could only terminate the contract for just

cause might be sufficient to create a property interest.  However, Grasson was not

an employee, and instead entered into a contract with the Board to provide pupil

transportation services.[96]

Courts in the Second Circuit have been reluctant to expand due

process protections to ordinary commercial contracts.  As explained in *S & D*

*Maintenance Co., Inc. v. Goldin*:

> [W]henever a person contracts with a state, breach by the state can
> be considered a denial of his entitlement to performance of the
> contract.  If the concept of 'entitlement' were this expansive,
> federal courts could be asked to examine the procedural fairness
> of every action by a state alleged to be in breach of its contracts.[97]

Instead, "the type of interest a person has in the enforcement of an ordinary

commercial contract often 'is qualitatively different from the interests the Supreme

Court has thus far viewed as 'property' entitled to procedural due process

---

[95]    *S & D Maintenance Co.*, 844 F.2d at 967.

[96]    *See Grasson I*, 2010 WL 1444570, at *5.  Grasson also admits that he
was not an employee.  *See* Pl. Mem. at 28 (stating that "the documentary evidence
produced by the Plaintiff establishes that there was no employer/employee
relationship between the parties and that the Plaintiff was an independent
contractor").

[97]    844 F.2d at 966.

protection.'"[98]  Thus, the Second Circuit recognizes that ordinary contract rights are different in substance from "welfare benefits conferred by statute upon our poorest citizens to provide for their immediate well-being, if not survival;"[99] social security benefits;[100] tenured status in public employment;[101] and permanent civil service employment.[102]  Each of these rights, as distinct from ordinary contract rights, invokes "a status, an estate within the public sphere characterized by a quality of either extreme dependence in the case of welfare benefits, or permanence in the case of tenure, or sometimes both, as frequently occurs in the case of social security benefits."[103]

Grasson argues that he had a "property interest in his continued employment providing transportation for children" because "he could only be terminated by the defendants for just cause as voted by a majority of the Orange

---

[98]   *Martz v. Incorporated Village of Valley Stream*, 22 F.3d 26, 30 (2d Cir. 1994) (quoting *S & D Maintenance Co.*, 844 F.2d at 966).

[99]   *S & D Maintenance Co.*, 844 F.2d at 965 (citing *Goldberg v. Kelley*, 397 U.S. 254 (1970)).

[100]   *See id.* (citing *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

[101]   *See id.* (citing *Perry v. Sindermann*, 408 U.S. 593 (1972) and *Roth*, 408 U.S. at 577)).

[102]   *See id.* (citing *Arnett v. Kennedy*, 416 U.S. 134 (1974)).

[103]   *Id.*

-26-

Board of Education during said 90-day period."[104]  But this argument misses the point.  While the transportation contract may require a finding of just cause for termination, it is a simple commercial contract between the Board and an owner/operator of a bus that neither invokes extreme dependence nor permanence.  Grasson was not dependent on the contract, because he contracted with the Winkles and the Amity school district, and the contract does not suggest permanence, because it had a five-year term.[105]  In short, this contract does not create a right protected by due process.[106]  Where a breach of contract does not give rise to a deprivation of a protectible property interest, plaintiff's exclusive remedy

---

[104]     Pl. Mem. at 25.  Grasson does not have a property right created by statute, because Connecticut General Statute 10-220, which authorizes the Board to enter into transportation contracts, does not state that contractors can only be terminated for just cause or that they have the right to notice and a hearing.  *Cf. J.O.M. Corp. v. Department of Health*, 697 F. Supp. 720, 724-25 (S.D.N.Y. 1988) (where state regulations require hearing to be held prior to disqualification of plaintiff from federally funded program, plaintiff had protectible property interest in receiving hearing).

[105]     *See, e.g.*, *San Bernardino Physicians' Servs. Med. Grp., Inc. v. County of San Bernardino*, 825 F.2d 1404 (9th Cir.1987) (denying due process protection for contractual right to supply medical services for four-year term).

[106]     *See, e.g.*, *Malapanis v. Regan*, 340 F. Supp. 2d 184, 192 (D. Conn. 2004) ("S & D Maintenance's holding is not so broad as to transform any contractual provision allowing termination for nonperformance, or failing to provide for unconditional termination, into a property right.").

-27-

"lies in state court for breach of contract."[107]  Accordingly, defendants' motion is granted as to Grasson's procedural due process claim based on a property interest.

### 2.    Liberty Interest

Grasson's procedural due process claim amounts to a stigma-plus claim.[108]  "It is well-settled that an individual's liberty can be implicated when a governmentally imposed stigma restricts his ability to seek and obtain employment," including the right of the individual to contract.[109]  Courts in the Second Circuit have often held that "one must have no ability to practice one's

---

[107]    *S & D Maintenance*, 844 F.2d at 968.  *Accord id.* at 967 ("Other courts of appeals have also been reluctant to surround the entire body of public contract rights with due process protections.") (citing *San Bernardino Physicians' Servs. Med. Grp., Inc.,* 825 F.2d 1404; *Brown v. Brienen*, 722 F.2d 360, 364 (7th Cir. 1983) (expressing doubt that due process protection extends to contractual right to compensatory time off and stating that "[w]e must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts."); *Casey v. DePetrillo*, 697 F.2d 22, 23 (1st Cir. 1983) (*per curiam*) (same); *Manning v. Lockhart*, 623 F.2d 536, 538 (8th Cir. 1980) (*per curiam*) (same)).

[108]    *See, e.g.*, Complaint ¶ 17 ("Plaintiff had a legal entitlement to and a legal interest in his good name, reputation, honor and integrity, to continue and engage in his occupation, and avoiding a stigma or other disability that foreclose other employment opportunities.").

[109]    *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 446 (2d Cir. 1980).  *Accord Patterson*, 370 F.3d at 330 ("For a government employee, a cause of action under § 1983 for deprivation of a liberty interest without due process of law may arise when an alleged government defamation occurs in the course of dismissal from government employment.").

-28-

profession at all in order to state a claim for deprivation of a liberty interest."[110] However, in the context of a stigma-plus claim, complete deprivation of the ability to practice one's profession is not required. Rather, offending statements are actionable when they "put a significant roadblock in that employee's continued ability to practice his or her profession . . . ."[111]

Grasson argues that the Board's statements "have destroyed [his] earning capacity because his livelihood as a bus driver requires contact with children."[112] However, Grasson admits that the Winkles and the Amity school district continue to employ him as a school bus driver, despite knowing why he was terminated by the Board.[113] Indeed, when asked whether he drove more following his termination than before, Grasson responded, "I drive probably just as much. Sometimes less; sometimes more."[114] Accordingly, there is no genuine

---

[110]    *Toussie*, 806 F. Supp. 2d at 579-80 (citing *Rodriguez v. Margotta*, 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999) (substantive due process); *Schultz v. Incorporated Vill. of Bellport*, No. 08 Civ. 0930, 2010 WL 3924751, at *7 (E.D.N.Y. Sept 30, 2010) (substantive due process)).

[111]    *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 630-31 (2d Cir. 1996).

[112]    Pl. Mem. at 22.

[113]    *See* Def. Rule 56(a)1 ¶ 52.

[114]    11/2/10 Deposition Transcript of Robert Grasson, Ex. B to Def. Mem., at 22.

dispute of material fact that the offending statements have placed a "significant roadblock" to his continued employment as a bus driver.  Defendants' motion is therefore granted as to Grasson's stigma-plus claim.

### D.    The Tort Claims Against the Individual Defendants

Defendants argue that because the Complaint is brought against the individual defendants in their official capacities only, the individual defendants are entitled to governmental immunity.[115]  They assert that a claim against an individual in his official capacity is treated as an action against the government entity itself, and note that the tort claims against the Board were already dismissed on the basis of governmental immunity.[116]  Specifically, they argue that (1) the defamation, invasion of privacy, and the tortious interference with business expectancy claims are barred by Connecticut General Statutes section 52-557n(a)(2)(A) insofar as the claims allege willful, wanton, or intentional misconduct; and (2) the claims for conversion and negligent infliction of emotional distress are barred by section 52-557n(a)(2)(B) because the Board's conduct was discretionary in nature.[117]

---

[115]    *See* Def. Mem. at 13-15.

[116]    *See id.* at 14.

[117]    *See id.* at 15.

Grasson does not deny that the individual defendants were sued in their official capacities.  By failing to address defendants' contention, Grasson has waived any argument to the contrary.[118]  Furthermore, Judge Dorsey stated in *Grasson I* that "the case will proceed on counts . . . III, IV, V, VI, VII, VIII against the individual defendants *in their official capacities*."[119]

"It is well settled law that an action against a government official in his or her official capacity is not an action against the official, but instead, is one against the official's office and, thus, is treated as an action against the entity itself."[120]  As a general rule, "governments and their agents are immune from liability for acts conducted in performance of their official duties."[121]  In ruling on

------

[118]  *See, e.g.*, *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing judgment fails to address the argument in any way.").

[119]  2010 WL 1444570, at *5 (emphasis added).  Following *Grasson I*, defendants filed an answer asserting as a second affirmative defense that plaintiff's claims were barred by governmental immunity.  *See* Docket No. 39.

[120]  *Kelly v. New Haven*, 275 Conn. 580, 595 (2005).  *Accord Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent.") (quotation marks omitted).

[121]  *Avoletta v. City of Torrington*, 133 Conn. App. 215, 221 (App. Ct. 2012) ("The common-law doctrine of governmental immunity has been statutorily enacted and is now largely codified in General Statutes § 52-557n.").

defendants' motion to dismiss pursuant to Rule 12(b)(6), Judge Dorsey determined "that the Board was acting as an agent of the municipality and that governmental immunity is thereby applicable to the Board to any extent it would apply to a municipality or municipal corporation."[122]

> Connecticut General Statutes section 52-557n(a)(2) states that:
>
> Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

Judge Dorsey's determination that the intentional tort claims are barred by section 52-557n(a)(2)(A) and the conversion and negligent infliction of emotional distress claims are barred by section 52-557n(a)(2)(B) applies to the claims asserted against the individual defendants in their official capacities.[123]

---

[122] *Grasson I*, 2010 WL 1444570, at *2. Grasson has not suggested any reason why Judge Dorsey's determinations should not be adhered to in the context of defendants' motion for summary judgment. *See Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009) ("The law of the case doctrine commands that 'when a court has ruled on an issue, that decision should generally be adhered to by the court in subsequent stages in the same case' unless 'cogent and compelling reasons militate otherwise'") (quoting *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002)).

[123] *See Grasson I*, 2010 WL 1444570, at *2-3.

Grasson argues that section 52-557n(c) provides a basis for liability because it permits a lawsuit against a board member acting in his official capacity if injury was caused by his reckless, wilful, or wanton misconduct.[124]  However, section 52-557n(c) only applies to actions seeking to impose *personal liability* on such board members or agents.  An official capacity suit, by contrast, seeks to impose liability on the municipality, not the person.  Therefore, section 52-557n(c) does not apply to the claims against the individual defendants here because they are sued only in their official capacities.[125]  Accordingly, defendants' motion for

---

[124]     Section 52-557n(c) provides that:

> Any person who serves as a member of any board, commission, committee or agency of a municipality and who is not compensated for such membership on a salary or prorated equivalent basis, shall not be personally liable for damage or injury . . . resulting from any act, error or omission made in the exercise of such person's policy or decision-making responsibilities on such board, commission, committee or agency if such person was acting in good faith, and within the scope of such person's official functions and duties, and was not acting in violation of any state, municipal or professional code of ethics regulating the conduct of such person . . . .  The provisions of this subsection shall not apply if such damage or injury was caused by the reckless, wilful or wanton misconduct of such person.

[125]     *See South Lyme Prop. Owners Ass'n, Inc. v. Town of Old Lyme*,  539 F. Supp. 2d 547, 561 (D. Conn. 2008) ("[Section] 52-557n(c) does not apply to official-capacity suits.").

-33-

summary judgment is granted as to the tort claims against the individual

defendants.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment

is GRANTED as to the substantive and procedural due process claims against the

Board and the individual defendants, GRANTED as to the tort claims against the

individual defendants, and DENIED as to the breach of contract claim against the

Board.  In addition, all claims are DISMISSED as to defendant Joseph Marulli,

who was not personally involved in any of the conduct alleged in the Complaint.[126]

Finally, because I am granting summary judgment in favor of defendants on all

federal claims, I decline to exercise supplemental jurisdiction over plaintiff's

breach of contract claim.  The Clerk of the Court is directed to close this case and

remand it forthwith to the Superior Court of Connecticut, Judicial District of New

Haven.[127]

---

[126]    Plaintiff did not respond to defendants' motion for summary judgment
as to Marulli, who was not present at either board meeting.  *See* Def. Mem. at 31-
32.

[127]    *See Gonzalez v. Micelli Chocolate Mold Co.*, 514 Fed. App'x 11, 12
(2d Cir. 2013) ("[W]here the federal claims are dismissed before trial, the state
claims should be dismissed as well."); *Selinger v. City of New York*, 453 Fed.
App'x 93, 96 (2d Cir. 2011) ("Because [defendant] was entitled to summary
judgment on [] federal claims, the district court was within its discretion to decline
exercising supplemental jurisdiction over [] remaining state law claims.").

-34-

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:          New York, New York
                June 4, 2014

**-Appearances-**

**For Plaintiff:**

Enrico Vaccaro, Esq.
Law Offices of Enrico Vaccaro
1057 Broad St.
Bridgeport, CT 06604
(203) 579-0001

**For Defendants:**

Alexandria L. Voccio, Esq.
David S. Monastersky, Esq.
Howd & Ludorf
65 Wethersfield Ave.
Hartford, CT 06114
(860) 249-1361